FILED
2015 Nov-13 PM 04:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

ELECTRONICALLY FILED
9/20/2015 6:33 PM
01-CV-2015-903635.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**State of Alabama**
**Unified Judicial System**

**Form ARCiv-93 Rev.5/99**

## COVER SHEET
## CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

Case Number:
01-CV-201

Date of Filing:
09/20/2015

## GENERAL INFORMATION

**IN THE CIRCUIT OF JEFFERSON COUNTY, ALABAMA**
**DAVID ADAMS ET AL v. UNITED STATES PIPE AND FOUNDRY COMPANY LLC ET AL**

**First Plaintiff:** ☐ Business ☑ Individual ☐ Government ☐ Other

**First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

**NATURE OF SUIT:**

**TORTS: PERSONAL INJURY**

- ☐ WDEA - Wrongful Death
- ☑ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonnes
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: ____________

**TORTS: PERSONAL INJURY**

- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**

- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP-Contempt of Court
- ☐ CONT-Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD-Eviction Appeal/Unlawfyul Detainer
- ☐ FORJ-Foreign Judgment
- ☐ FORF-Fruits of Crime Forfeiture
- ☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB-Protection From Abuse
- ☐ FELA-Railroad/Seaman (FELA)
- ☐ RPRO-Real Property
- ☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP-Workers' Compensation
- ☐ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ **INITIAL FILING** A ☐ **APPEAL FROM DISTRICT COURT** O ☐ **OTHER**

R ☐ **REMANDED** T ☐ **TRANSFERRED FROM OTHER CIRCUIT COURT**

**HAS JURY TRIAL BEEN DEMANDED?** ☑ **Yes** ☐ **No**

**RELIEF REQUESTED:** ☑ **MONETARY AWARD REQUESTED** ☐ **NO MONETARY AWARD REQUESTED**

**ATTORNEY CODE:** JON185 9/20/2015 6:33:56 PM /s/ ROBERT ANDREW JONES

**MEDIATION REQUESTED:** ☐ **Yes** ☐ **No** ☑ **Undecided**

ELECTRONICALLY FILED
9/20/2015 6:33 PM
01-CV-2015-903635.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT
FOR THE TENTH JUDICIAL CIRCUIT
JEFFERSON COUNTY, ALABAMA**

**DAVID ADAMS, et al.,**

**Plaintiffs,**

**vs.**

**UNITED STATES PIPE and FOUNDRY COMPANY, LLC; MUELLER WATER PRODUCTS, INC.; USP HOLDINGS, INC.;** and **FICTITIOUS DEFENDANTS A-C**

**Defendants.**

**Civil Action No. ____________________**

# COMPLAINT

COME NOW the Plaintiffs (both named in the above style, and as listed on "Exhibit 1"), by and through their undersigned counsel, and file this complaint and state as follows:

## NATURE OF COMPLAINT

1. This is a civil action for equitable relief, compensatory and punitive damages, costs incurred and to be incurred by Plaintiffs, and any other damages which the Court or jury may deem appropriate for personal injury arising from the intentional, knowing, reckless, and negligent acts and omissions of United States Pipe and Foundry Company, LLC, Mueller Water Products, Inc., USP Holdings, Inc., and Fictitious Defendants (hereinafter referred to as "U.S. Pipe" or "Defendants") in connection with contamination of the residential areas surrounding their North Birmingham plant located at or around 3000 30th Avenue North, Birmingham, Alabama 35207 (hereinafter referred to as "the Plant") in which Plaintiffs lived, worked, and/or frequented.

## PARTIES AND JURISDICTION

2. Plaintiff, David Adams, is over 19 years of age and is a citizen and resident of Jefferson County, Alabama. Attached hereto as "Exhibit 1" are additional Plaintiffs who bring the present suit. Said Plaintiffs are over 19 years of age, and their respective residency is listed on "Exhibit 1". All such Plaintiffs are incorporated herein as if named in the above-style, and collectively will be referred to as "Plaintiffs" hereafter.

3. Defendant, United States Pipe and Foundry Company, LLC, is, upon information and belief, an Alabama corporation with its principal place of business located in Birmingham, AL. This Defendant may be lawfully served with the summons and a copy of this Complaint upon its registered agent: CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama, 36104.

4. Defendant, Mueller Water Products, Inc., is, upon information and belief, a Delaware corporation with its principal place of business located in Atlanta, Georgia. This Defendant may be lawfully served with the summons and a copy of this Complaint upon its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

5. Defendant USP Holdings, Inc., is, upon information and belief, a Delaware corporation. This Defendant may be lawfully served with the summons a copy of this Complaint upon its registered agent: The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6. Fictitious Defendants A-C refer to any other business, entity, operation, individual, or organization whose identities and true names are currently unknown to Plaintiff, that are in some manner responsible for the occurrences alleged herein and that Plaintiffs'

damages alleged herein were proximately caused by their conduct. The Plaintiffs will amend this complaint to state the true names and capacities of Fictitious Defendants A-C when they have been ascertained.

7. The Defendants are subject to the jurisdiction of this Honorable Court on the grounds (a) that one or more of the Defendants is a domestic corporation organized and existing under the laws of the State of Alabama and (b) that one or more of the Defendants is a foreign corporation that either are registered to conduct business in the State of Alabama or that actually transacted business in Alabama or that are successors of such corporations.

8. Venue is proper in this Honorable Court because the cause of action arose in Jefferson County, Alabama.

## BACKGROUND FACTS

### Defendants' Corporate History

9. This action concerns the Defendants' pollution of certain neighborhoods with toxic substances including, but not limited to, lead, benzene, xylenes, beryllium, volatile organic compounds (hereinafter known as "VOCs"), and other hazardous substances and waste materials (hereinafter collectively known as "the Contaminants"). These Contaminants had an immediate and/or permanent adverse effect upon human health and the natural environment in which the Plaintiffs lived, worked, and/or frequented.

10. The Plant began operating in 1901 as a ductile iron foundry owned by The Dimmick Pipe Company. The Plant casted and sold iron pipes in sizes ranging from 4-24 inches with initial production coming from four pits at a rate of 150-175 tons per day. This process utilized cupola furnaces to melt the metal which was then cast in pipe molds.

11. The original U.S. Pipe, United States Cast Iron Pipe and Foundry Company, was incorporated in 1899, and it purchased the Plant from Dimmick in 1911. A few years later, a second shop was added on, producing 30-60 inch pipes at a rate of 125 tons per day.

12. In the 1920's, the Plant integrated a new pipe production process known as centrifugal casting, which consisted of introducing molten iron into a rapidly rotating steel mold, allowing for mass production of a superior quality pipe. The facilities at the Plant eventually consisted of the foundry, a landfill for the disposal of solid wastes, several treatment ponds, and pipe storage yards.

13. In 1969, the Jim Walter Corporation of Tampa, Florida acquired the Plant. After a recapitalization in 1995, the company was listed on the New York Stock Exchange as Walter Industries, Inc.

14. By the 1990's, annual production had hit a peak in the range of 190,000-220,000 tons, which was sustained through the early 2000's. Operations slowed down with the economy in 2008 as the company's workforce at the Plant was reduced by a third.

15. In 2005, Walter Industries acquired Mueller Water Products, Inc., and in 2006, United States Pipe and Foundry Company, LLC and Mueller Water Products, Inc. were both spun off into a newly publicly traded company called Mueller Water Products, Inc.

16. Operations permanently ceased in 2010, and the Plant itself was demolished in April 2012 shortly after Mueller Water Products completed the sale of United States Pipe and Foundry Company, LLC to USP Holdings, Inc.. Through information and belief, the sale of the North Birmingham plant did not remove all of the liabilities associated with the Mueller defendant.

**Defendants' Operations and Toxic Emissions**

17. The Defendants' operated a cupola melting furnace at the Plant. This type of furnace typically burned coke to melt iron scrap used for casting pipes. Once molten, the iron would be treated with various chemicals to convert the brittle cast iron into ductile iron.

18. Cupola melting furnaces produce a collection of particulate emissions, some of which are captured and disposed of as solid and/or liquid wastes through landfills and wastewater ponds on site and some of which escaped into the air.

19. Once the molten iron was treated, it was poured into a cast with a bell on it to facilitate the use of gasketed joints during subsequent laying of the pipeline. A molded sand core was used to form the interior contour of the bell. Organic waste materials are emitted during both the process of making the sand core and its subsequent contact with the molten metal.

20. Once the pipe has been cast, the exterior surfaces of the pipe were often painted and/or treated with a substance containing VOCs, some of which escape into the air and others that are disposed of as solid and/or liquid waste on site.

21. As a result of the Defendants' operations from 1911 through 2010, including but not limited to those described above, Defendants deposited various waste products, including but not limited to the Contaminants and other hazardous substances and waste materials described above, in the neighborhoods surrounding the Plant (hereinafter known as the "Releases").

22. Additionally, the Defendants' conduct and practices allowed the Contaminants to migrate to and/or become located in the surrounding neighborhoods through emissions in the air and/or flow from surface water, ground water, or discharge into waterways and ground soil.

23. These neighborhoods affected by the Defendants' operations include the neighborhoods of Collegeville, North Birmingham, Fairmont, Harriman Park, and other surrounding areas ("hereinafter known as "the Neighborhoods").

24. The Contaminants deposited and/or released by the Defendants' have remained in the Neighborhoods from the time they first arrived on the premises until the present time. Although the Plant ceased operations in the area in 2010, the effects of their operations are still present in the Neighborhoods and exposure continues to this day.

25. All of the Contaminants are considered to be harmful to human health by the United States Environmental Protection Agency (hereinafter known as "USEPA").

26. Lead is a naturally occurring bluish-gray metal found in small quantities in the earth's crust that is used in large quantities in the manufacturing of the type of pipes made by the Plant.

27. Lead is a bioretentive substance in the sense that it is retained in the blood and/or tissues of living organisms, including humans, exposed to the chemical over time.

28. Lead is a bioaccumulative substance in the sense that the levels of the chemical will build up and/or accumulate to higher levels in the blood, tissues, and/or bones of living organisms, including humans, exposed to the chemical over time.

29. Lead is a biopersistent substance in the sense that the chemical will tend to remain present over time in environmental media where it is released and/or comes to be located.

30. The USEPA has classified lead as a probable human carcinogen and has identified a link between lead and numerous cancerous and non-cancerous health conditions.

31. Lead is a hazardous substance, hazardous waste, solid waste, toxin, carcinogen, pollutant, and/or contaminant.

32. Beryllium is a hard gray metal that does not occur naturally. Beryllium is used in the manufacturing process of numerous different products, including the manufacturing processes taking place at the Plant.

33. The USEPA has classified beryllium as a probable human carcinogen and has identified a link between beryllium and numerous cancerous and non-cancerous health conditions.

34. Beryllium is a hazardous substance, hazardous waste, solid waste, toxin, carcinogen, pollutant, and/or contaminant.

35. Benzene is a waste product found in the emissions from processes including, but not limited to, the burning of coal and/or oil based products.

36. The USEPA has classified benzene as a known human carcinogen and has identified a link between benzene and numerous cancerous and non-cancerous health conditions.

37. Benzene is a hazardous substance, hazardous waste, solid waste, toxin, carcinogen, pollutant, and/or contaminant.

38. Xylenes are chemical compounds often used in industrial solvents. Xylenes have the potential to be released in either the air or groundwater coming from an industrial site if proper care is not taken.

39. The USEPA has identified a link between xylenes and numerous human health conditions.

40. Xylenes are a hazardous substance, hazardous waste, solid waste, toxin, carcinogen, pollutant, and/or contaminant.

41. Defendants emitted the Contaminants into the air from the Plant into the surrounding environment.

42. Defendants released the Contaminants into the groundwater from the Plant.

43. Defendants knew of their emissions of the Contaminants for years without disclosing this information to residents of the Neighborhoods.

44. Since no later than 1985, the Plant has been subject to inspections by regulatory authorities that test for emissions of waste products, specifically including but not limited to lead.

45. Just since 1985, the Plant has been cited in excess of 100 times for citations or violations of state and federal environmental regulations for their operation of the Plant. At least one such violation directly resulted from the release of excess lead in wastewater flowing from the Plant.

46. Because of these inspections and citations, the Defendants knew or should have known years ago of the harmful effects of releasing emissions such as the Contaminants and/or lead.

47. In 2012, the USEPA began investigating the Defendants as part of the USEPA's ongoing project at the 35th Avenue Superfund Site (hereinafter known as the "Site"). In September 2013, the Defendants were named as "potentially responsible part(ies)" for cleanup activities that would take place within the Superfund Site which includes significant parts of the Neighborhoods described herein.

48. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human blood related illnesses and/or conditions: 1) anemia, 2) hypochromic anemia, 3) microcytic anemia, 4) Myelodysplastic syndrome, and 5) poor blood flow.

49. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human cancers: 1) cervical cancer, 2) colon cancer, 3)

esophageal cancer, 4) Hodgkin's lymphoma, 5) kidney cancer, 6) leukemia, 7) liver cancer, 8) lung cancer, 9) lymphoma, 10) melanoma, 11) nasal cancer, 12) ovarian cancer, 13) stomach cancer, and 14) throat cancer.

50. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human cardiovascular illnesses and/or conditions: 1) atherosclerosis, 2) cardiomyopathy, 3) heart attack, and 4) peripheral vascular disease.

51. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human kidney related illnesses and/or conditions: 1) kidney problems, 2) kidney disease, 3) kidney stones, and 4) end stage renal disease.

52. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human neurological disorders and/or conditions: 1) attention deficit disorder/ attention deficit hyperactivity disorder, 2) behavioral problems, 3) decreased coordination, 4) disequilibrium, 5) decreased IQ, 6) developmental delays, 7) learning disabilities, 9) mental retardation, 10) seizures, and 11) epilepsy.

53. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human illnesses and/or conditions related to circulation and/or sensation: 1) numbness of the arms, 2) numbness of the legs, 3) numbness of the hands, 4) numbness of the feet, 5) numbness of the toes, 6) neuropathy, and 7) gout.

54. Relevant medical literature and/or scientific research support a link between the Contaminants and the following disorders and/or conditions related to human pregnancy and/or reproduction: 1) congenital bronchial cleft crest birth defects, 2) infantile gastroesophageal reflux, 3) infantile laryngomalacia, 4) delayed growth, 5) miscarriage, and 6) menstrual disorders.

55. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human respiratory illnesses and/or conditions: 1) aspergillus, 2) asthma, 3) chronic bronchitis, 4) chronic obstructive pulmonary disease, 5) emphysema, 6) hypersensitivity, 7) mesothelioma, and 8) sarcoidosis.

56. Relevant medical literature and/or scientific research support a link between the Contaminants and the following human skin disorders and/or conditions: 1) hyper-pigmentation, 2) hyperkeratosis, 3) rashes, and 4) blisters on feet.

57. Relevant medical literature and/or scientific research support a link between the Contaminants and the following other human disorders and/or conditions: 1) hearing loss, 2) vision loss, 3) no sense of smell, and 4) autoimmune disorders.

58. All of the human illnesses and/or conditions and/or disorders contained in the foregoing paragraphs 24 through 32 are hereinafter known as the "Linked Diseases."

**The Defendants' Misconduct**

59. Defendants at all times relevant to this complaint knew, or in the exercise of ordinary care should have known, that the Releases from the Plant were poisonous and harmful to human beings.

60. Defendants at all times relevant to this complaint knew, or in the exercise of ordinary care should have known, that once released into the environment, these Releases from the Plant posed a serious health hazard to humans and would cause injury and potential death to those exposed.

61. Knowing of their danger, Defendants nevertheless continued to release the Contaminants into the surrounding environment, including the Neighborhoods.

62. Defendants failed to timely and adequately warn the Plaintiffs and others of the toxic exposure from the Releases and the dangers to both person and property associated therewith.

63. Defendants specifically disregarded the safety of the Plaintiffs and others by fraudulently concealing the nature of their emissions into the environment.

64. The Contaminants released into the environment contaminated and continue to contaminate the air, soil, sediment, and ground water in the surrounding area, including the Neighborhoods.

65. The actions of the Defendants and their employees, agents, officers, and representatives, were negligent, reckless, willful, and wanton, and constitute a disregard for the health and safety of those living, working, or visiting in the surrounding area.

66. The aforementioned operations and conduct by the Defendants constituted violations of laws intended to protect Plaintiffs and others similarly situated from the effects of the Releases including, but not limited to, the following laws:

(a) THE RESOURCE CONSERVATION AND RECOVERY ACT, 42 U.S.C. §§ 6901, *et seq*. (1976), as amended, as described in 40 CFR Parts 239-282 and in ADEM[1] Admin. Code R. 335-13 and 335 – 14 (hereinafter "RCRA").

(b) THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT, 42 U.S.C. §§ 9601, *et seq*. (1980), as amended, as described in 40 CFR Parts 370 – 374 (hereinafter "CERCLA").

(c) SUPERFUND AMENDMENT AND REAUTHORIZATION ACT OF 1986, Pub. L. No. 99-499 (codified as amended in scattered sections of the UNITED STATES CODE), as described in 40 CFR Parts 370 – 274 (hereinafter

[1] "ADEM" refers to the Alabama Department of Environmental Quality.

"SARA"). This legislation reauthorized CERLA to continue cleanup activities around the country.

(d) THE EMERGENCY PLANNING COMMUNITY RIGHT TO KNOW ACT, 42 U.S.C. §§ 11001, *et seq.* (1986), as amended, as described in 40 CFR Part 370. Also known as Title III of SARA, this legislation was enacted to help local communities protect public health, safety, and the environment from chemical hazards.

(e) OSHA[2] Hazardous Waste Operations and Emergency Response Standard, which applies to all facilities and situations in which workers are exposed to physical or chemical hazards during activities such as cleaning up hazardous waste sites or responding to emergencies involving releases of hazardous materials or wastes under CERCLA or RCRA, as described in 29 CFR §§ 1910.120 and 1926.65.

(f) THE CLEAN AIR ACT, 42 U.S.C. §§ 7401, *et seq.* (1970), as amended, as described in 40 CFR Parts 50 – 97, and in ADEM Admin. Code R. 335-3 and in the JCDH-APCP[3] Rules and Regulations.

(g) THE CLEAN WATER ACT, 33 USCS §§ 1251, *et seq.* (1972), as amended, as described in 40 CFR Parts 100 – 149 and in ADEM Admin. Code R. 335-6.

(h) THE SOLID WASTE DISPOSAL ACT, 42 USCS §§ 6901 *et seq.*

(i) THE ALABAMA AIR POLLUTION CONTROL ACT OF 1971, CODE OF ALABAMA §§ 22-28-1, *et seq.*

---

[2] "OSHA" refers to the Occupational Safety and Health Administration.

[3] "JCDH-APCP" refers to the State of Alabama Jefferson County Department of Health Air Pollution Control Program.

(j) THE ALABAMA HAZARDOUS WASTES MANAGEMENT AND MINIMIZATION ACT, CODE OF ALABAMA §§ 22-30-1, *et seq*.

(k) THE ALABAMA SOLID WASTES DISPOSAL ACT, CODE OF ALABAMA §§ 22-27-1, *et seq*.

(l) THE ALABAMA ENVIRONMENTAL MANAGEMENT ACT, CODE OF ALABAMA §§ 22-22A-1, *et seq*.

(m) THE ALABAMA WATER POLLUTION CONTROL ACT, CODE OF ALABAMA §§ 22-22-1, *et seq*.

(n) THEE ALABAMA UNDERGROUND STORAGE TANK AND WELLHEAD PROTECTION ACT OF 1988, CODE OF ALABAMA §§ 22-36-1, *et seq*.

(o) ADEM Regulation 335-3-3-.05(19)(c).

(p) ADEM Regulation 335-3-4-.02(1) and (2).

(q) ADEM Regulation 335-3-14-.01(1)(b).

(r) ADEM Regulation 335-14-5.

(s) ADEM Regulation 335-14-7-.08.

(t) ADEM Regulation 335-14-7-.08, subpart H.

(u) ADEM Regulation 335-14-X.

67. The actions of Defendants in violating the foregoing laws and regulations constitute violations of duties imposed by laws intended to prevent harm to the Plaintiff and other similarly situated people.

**Plaintiffs' Injuries**

68. For some period of time between 1995 and 2010, when the Plant ceased its operations, each of the Plaintiffs lived, worked, and/or frequented one or more locations within

the Neighborhoods and were exposed to toxicologically significant levels of the Contaminants released from the Plant.

69. Because of this exposure to the Contaminants from Defendants' North Birmingham plant, each Plaintiff has sustained significant injuries and damages, including but not limited to one or more of the Linked Diseases.

## COUNT ONE – NEGLIGENCE

70. The Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

71. The Defendants had a duty to operate and manage the Plant in such a way as to not create a nuisance or condition causing any injury or damage to human health or to the environment.

72. The Defendants breached this duty of care by negligently operating and/or managing the Plant and/or conducting other operations and activities at the Plant in such a manner as to negligently cause, permit, and/or allow the Releases, thereby contaminating the air and/or water and/or soil in the Neighborhoods and the blood/body of the Plaintiffs.

73. As a direct, proximate, and foreseeable result of the Defendants' continuous conduct, practices, and inactions, the Plaintiffs have been caused to suffer, and will continue to suffer, damages resulting from Plaintiffs' personal injuries.

## COUNT TWO – WANTONNESS

74. The Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

75. In breaching the duties described above, the Defendants acted in a wanton, willful, and reckless manner.

76. The Defendants knew or should have known the danger to Plaintiffs created by Defendants' conduct, practices, actions, and inactions.

77. The Defendants knew or should have known of the likely or probable impact, harm, damage, and injury their conduct, practices, actions, and inactions would have on and/or cause Plaintiffs.

78. The Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard for the Plaintiffs' health and safety.

79. As a direct, proximate, and foreseeable result of the Defendants' continuous conduct, practices, actions, and inactions, the Plaintiffs have been caused to suffer, and will continue to suffer, damages to Plaintiffs' health.

**COUNT THREE – CONCEALMENT, MISREPRESENTATION AND FRAUD**

80. The Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

81. In connection with the operation of the Plant, the Defendants had an affirmative duty to disclose to the Plaintiffs, other exposed individuals, and the public at large the actual and potential harm to their persons as a direct and proximate result of the Defendants' acts and/or omissions, including an affirmative duty to disclose to Plaintiffs, other exposed individuals, and the public at large that the Defendants' Releases had, and were continuingly, exposing the Plaintiffs, other exposed individuals, and the public at large to harmful and toxicologically significant levels of the Contaminants.

82. Through the process of regulatory compliance and inspections that had been occurring since at least the early 1980's, the Defendants knew or should have known of the harmful effects of its Releases and the Contaminants.

83. Despite the Defendants' knowledge regarding the Releases and the Contaminants, and despite the Defendants' duties to disclose to the Plaintiffs, other exposed individuals, and the public at large, the Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from the Plaintiffs, other exposed individuals, and the public at large regarding the Releases and exposure to the Contaminants.

84. The Plaintiffs, other exposed individuals, and the public at large were damaged and physically harmed as a direct and proximate result of the Defendants' representations, concealments, and/or omissions and, as a direct and proximate result of such justified reliance the Plaintiffs continued to live, work in, and/or frequent the Neighborhoods which were contaminated with harmful and toxicologically significant levels of the Contaminants and each suffered injuries and damages.

## COUNT FOUR – CONSPIRACY

85. Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

86. Defendants and their employees, agents, officers, and representatives conspired:

a. To release the Contaminants from the Plant in quantities and in a manner in violation of the law;

b. To conceal the fact that the Contaminants were being released from the Plant;

c. To conceal the fact that human exposure to the Contaminants from the Plant would lead to injury and/or death in those exposed;

d. To conceal the fact that the Contaminants were being released on to the properties of the Plaintiffs and other landowners in the Neighborhoods;

e. To conceal the fact that Defendants knew their contaminates were invading the bodies of individuals, including Plaintiffs, in the surrounding communities;

f. To evade liability for damages caused by the Contaminants released from the Plant through corporate restructuring and/or reorganizing.

87. Defendants and others took overt actions to further the purpose of their conspiracy.

88. The Plaintiffs, other exposed individuals, and the public at large were damaged and physically harmed as a direct and proximate result of the Defendants' conspiracy and, as a direct and proximate result of such concealment, the Plaintiffs continued to live, work in, and/or frequent the Neighborhoods which were contaminated with harmful and toxicologically significant levels of the Contaminants and each suffered injuries and damages.

## COUNT FIVE – NEGLIGENCE PER SE

89. Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

90. By its acts and omissions resulting in the Releases, Defendants violated one or more applicable United States and Alabama regulations and statutes designed to protect persons such as the Plaintiffs, constituting negligence per se, including liability for injuries described herein to the Plaintiffs, other exposed individuals, and the public at large associated with the Releases.

91. Defendants' violation of law proximately caused and continues to proximately cause damage to the Plaintiffs, other exposed individuals, and the public at large in the form of economic damage and bodily injury for which the Defendants are liable.

## COUNT SIX – BATTERY

92. Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

93. Defendants owe a duty to the Plaintiffs to exercise due and reasonable care in manufacturing, storage, disposal, and other operations to safely, adequately, and properly use, control, maintain, store, treat, and dispose of various waste substances.

94. Defendants owe a duty to the Plaintiffs to conduct its operations in such a way to prevent toxic substances and materials from invading the physical person of the Plaintiffs.

95. Defendants intentionally and knowingly engaged in the conduct, practices, actions, and inactions that resulted in an invasion of Plaintiffs' person as described herein.

96. Defendants' invasion as described herein affected the Plaintiffs such that it caused then injury and harm.

97. The invasion and presence of the Contaminants into the Plaintiffs' bodies was and continues to be without permission or authority from Plaintiffs.

98. Defendants' past and continuing physical battery to the Plaintiffs' bodies proximately caused, and continues to proximately cause, substantial damage to the Plaintiffs.

## COUNT SEVEN – PUNITIVE DAMAGES

99. Plaintiffs adopt and incorporate by reference all the foregoing language of this Complaint as if fully set forth herein and further state as follows.

100. The Defendants' acts and omissions as described above were conducted with such intentional, malicious, wanton, willful, grossly negligent, and/or reckless indifference to the rights of Plaintiffs, other exposed individuals, and the public at large that the Defendants are liable for punitive damages.

101. The Defendants' acts and omissions as described above were conducted with such flagrant disregard for the safety and wellbeing of Plaintiffs, other exposed individuals, and the public at large that the Defendants are liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs demand judgment against the Defendants, separately and severally, for compensatory damages, special damages, exemplary damages, punitive damages, and all such other damages to which the Plaintiffs may be entitled under Alabama law, up to a total of $74,999; and for all such other relief to which Plaintiffs may be entitled under Alabama law. Plaintiffs demand a trial of this action by struck jury.

Respectfully submitted this 20th day of September 2015,

/s/ Jon C. Conlin

JON C. CONLIN (CON049)
R. ANDREW JONES (JON185)
Attorneys for Plaintiff
CORY WATSON, P. C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896
jconlin@corywatson.com
ajones@corywatson.com
***Attorneys for Plaintiff***

ELECTRONICALLY FILED
9/20/2015 6:33 PM
01-CV-2015-903635.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# EXHIBIT 1

| Last Name | First Name | Address | City | State | Zipcode | County |
|---|---|---|---|---|---|---|
| Adams | David | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Aqeel | Detra | | Birmingham | AL | | Jefferson |
| Aqeel | Kamahrya | | Birmingham | AL | | Jefferson |
| Baskett | James | | Birmingham | AL | | Jefferson |
| Bennett | Tiffany | | Birmingham | AL | | Jefferson |
| Birts | Lucille | | Birmingham | AL | | Jefferson |
| Brown | Devin | | Birmingham | AL | | Jefferson |
| Brown | Dorothy | | Birmingham | AL | | Jefferson |
| Brown | Frank | | Birmingham | AL | | Jefferson |
| Brown | Sonja | | Helena | AL | | Shelby |
| Bryant | Ruth | | Birmingham | AL | | Jefferson |
| Carmichael | Arthur | | Birmingham | AL | | Jefferson |
| Carter | Philandria | | Birmingham | AL | | Jefferson |
| Catlin | Debra | | Birmingham | AL | | Jefferson |
| Chambers | Gloria | | Birmingham | AL | | Jefferson |
| Cole | George | | Birmingham | AL | | Jefferson |
| Coleman | Anthony | | Jasper | AL | | Walker |
| Connor | Jeffrica | | Birmingham | AL | | Jefferson |
| Curry | Kecia | | Birmingham | AL | | Jefferson |
| Davis | Constance | | Birmingham | AL | | Jefferson |
| Davis | Zuleika | | Birmingham | AL | | Jefferson |
| Dizaar | Tyneasha | | Birmingham | AL | | Jefferson |
| Eaton | Vickie | | Birmingham | AL | | Jefferson |
| Edwards | Pamela | | Birmingham | AL | | Jefferson |
| Finn | Patricia | | Birmingham | AL | | Jefferson |
| Foster | Wanda | | Birmingham | AL | | Jefferson |
| Frazier | Benjamin | | Birmingham | AL | | Jefferson |
| Green | Aretha | | Birmingham | AL | | Jefferson |
| Greene | Kit | | Birmingham | AL | | Jefferson |
| Groce | Schwanda | | Talladega | AL | | Talladega |
| Hall | Kamelia | | Brookside | AL | | Jefferson |
| Hall, Sr. | Nathaniel | | Midfield | AL | | Jefferson |
| Harris | Anauria | | Birmingham | AL | | Jefferson |
| Harris | Kanetra | | Birmingham | AL | | Jefferson |
| Hawthorne | Felicia | | Birmingham | AL | | Jefferson |
| Hill | Javonta | | Birmingham | AL | | Jefferson |
| Holman | Kiyonia | | Birmingham | AL | | Jefferson |
| Hooks | Gloria | | Birmingham | AL | | Jefferson |
| Ingram | Marva | | Birmingham | AL | | Jefferson |
| Ingram | Sharonda | | Birmingham | AL | | Jefferson |
| Jackson | Debra | | Birmingham | AL | | Jefferson |
| Jackson | Lisa | | Midfield | AL | | Jefferson |
| Johnson | Marvin | | Bessemer | AL | | Jefferson |
| Jones | Willie | | Birmingham | AL | | Jefferson |
| King | Ashley | | Birmingham | AL | | Jefferson |
| Kirksey | Mable | | Birmingham | AL | | Jefferson |
| Kitt | Pearl | | Forestdale | AL | | Jefferson |
| Knight | Corliss | | Birmingham | AL | | Jefferson |
| Lee | Joe | | Birmingham | AL | | Jefferson |

| Last Name | First Name | Address | City | State | Zipcode | County |
|---|---|---|---|---|---|---|
| Lee | Rontarius | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Leonard | Casandra | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Lofton | Patricia | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Mabry | Brittany | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Manning | Brandon | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| McAdory | Sherrita | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| McDaniel | Tiffany | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| McFarland | William | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Moore | Charlena | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Morris | Jeromy | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Murrell | Eugenia | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Neely | Trayanna | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Osborne | Shatanya | [redacted] | Harpersville | AL | [redacted] | Jefferson |
| Owens | Juanita | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Parks | Jo Ann | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Pearsall | Sharon | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Penn | Anna | [redacted] | Center Point | AL | [redacted] | Jefferson |
| Pointer | Delores | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Powell | Beatrice | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Pullom | Freddie | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Reid | Yunikeo | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Roscoe | Stephanie | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Royal | David | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Sanders | Howard | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Sanders | Juquita | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Scott | April | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Smith | Mary | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Spencer | Dawn | [redacted] | Atlantic City | NJ | [redacted] | Atlantic |
| Spratt | Rodrick | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Stephenson | Tara | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Stevenson | Patricia | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Stuart | Donnela | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Taylor | Eddie | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Thomas | Andre | [redacted] | Palm Bay | FL | [redacted] | Brevard |
| Thomas | Erica | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Thomas | Leroy | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Thomas | Sharon | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Thomas-Delemus | Courtney | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Trainer | Allen | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Twitty | Rose | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Watkins | Whitney | [redacted] | Portsmouth | VA | [redacted] | Portsmouth City |
| West | Anthony | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Weston | Dora | [redacted] | Fairfield | AL | [redacted] | Jefferson |
| Whatley | Angela | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Whatley | April | [redacted] | Adamsville | AL | [redacted] | Jefferson |
| White | Jacques | [redacted] | Birmingham | AL | [redacted] | Jefferson |
| Williams-Gowdy | Angela | [redacted] | Birmingham | AL | [redacted] | Jefferson |

| State of Alabama<br>Unified Judicial System<br>Form C-34 Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>01-CV-2015-903635.00 |
|---|---|---|

IN THE CIRCUIT COURT OF JEFFERSON COUNTY
DAVID ADAMS ET AL V. UNITED STATES PIPE AND FOUNDRY COMPANY LLC ET AL

NOTICE TO UNITED STATES PIPE AND FOUNDRY COMPANY LLC, C/O CSC LAWYERS INC. 150 S PERRY ST, MONTGOMERY, AL 36104

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ROBERT ANDREW JONES

WHOSE ADDRESS IS 2131 MAGNOLIA AVENUE, SUITE 200, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of DAVID ADAMS pursuant to the Alabama Rules of the Civil Procedure

Date 9/20/2015 6:34:03 PM

/s/ ANNE-MARIE ADAMS
Clerk/Register
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

☑ Certified Mail is hereby requested

/s/ ROBERT ANDREW JONES
Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ____________________

☐ I certify that I personally delivered a copy of the Summons and Complaint to ____________________

____________________ in ____________________ County, Alabama on ____________________ (Date)

| Date | Server's Signature | Address of Server |
|---|---|---|
| Type of Server | Server's Printed Name | |
| | | Phone Number of Server |

| State of Alabama<br>Unified Judicial System<br>Form C-34 Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>01-CV-2015-903635.00 |
|---|---|---|

IN THE CIRCUIT COURT OF JEFFERSON COUNTY
DAVID ADAMS ET AL V. UNITED STATES PIPE AND FOUNDRY COMPANY LLC ET AL

NOTICE TO MUELLER WATER PRODUCTS, INC., C/O CORPORATION TRUST CO. 1209 ORANGE ST, WILMINGTON, DE 19801

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ROBERT ANDREW JONES

WHOSE ADDRESS IS 2131 MAGNOLIA AVENUE, SUITE 200, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of DAVID ADAMS pursuant to the Alabama Rules of the Civil Procedure

Date 9/20/2015 6:34:03 PM

/s/ ANNE-MARIE ADAMS
Clerk/Register
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

☑ Certified Mail is hereby requested

/s/ ROBERT ANDREW JONES
Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ____________________

☐ I certify that I personally delivered a copy of the Summons and Complaint to ____________________

____________ in ____________ County, Alabama on ____________ (Date)

| | | |
|---|---|---|
| Date | Server's Signature | Address of Server |
| Type of Server | Server's Printed Name | |
| | | Phone Number of Server |

| State of Alabama<br>Unified Judicial System<br>Form C-34 Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>01-CV-2015-903635.00 |
|---|---|---|

IN THE CIRCUIT COURT OF JEFFERSON COUNTY

DAVID ADAMS ET AL V. UNITED STATES PIPE AND FOUNDRY COMPANY LLC ET AL

NOTICE TO USP HOLDINGS, INC., C/O CORPORATION TRUST CO. 1209 ORANGE ST, WILMINGTON, DE 19801

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY ROBERT ANDREW JONES

WHOSE ADDRESS IS 2131 MAGNOLIA AVENUE, SUITE 200, BIRMINGHAM, AL 35205

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of DAVID ADAMS pursuant to the Alabama Rules of the Civil Procedure

Date 9/20/2015 6:34:03 PM

/s/ ANNE-MARIE ADAMS
Clerk/Register
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL 35203

☑ Certified Mail is hereby requested

/s/ ROBERT ANDREW JONES
Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ______________________

☐ I certify that I personally delivered a copy of the Summons and Complaint to ______________________

______________ in ______________________ County, Alabama on ______________
(Date)

| Date | Server's Signature | Address of Server |
|---|---|---|
| Type of Server | Server's Printed Name | |
| | | Phone Number of Server |